UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Cr. No. 94-10287-MLW |
| ) | |
| FRANCIS P. SALEMME, ET AL. ) | |

ORDER

WOLF, D.J.                                January 13, 1997

For the reasons stated in detail in court on January 9 and 10, 1997, it is hereby ORDERED that:

1. Defendants' Motion to Dismiss Counts 1 and 2 of the Fourth Superseding Indictment ("4SI") based on a failure to adequately allege the separate existence of the RICO Enterprise (Issue I.b)[1] is DENIED. See Chang v. Chen, 80 F.3d 1293, 1296-99 (9th Cir. 1996); United States v. London, 66 F.3d 1227, 1243-44 (1st Cir. 1995); Libertad v. Welch, 53 F.3d 428, 441-442, n. 10 (1st Cir. 1995); United States v. Console, 13 F.3d 641, 650-652 (3rd Cir. 1993); United States v. Bledsoe, 674 F.2d 647, 665 (9th Cir. 1981). In summary, the 4SI alleges an association-in-fact made up of individuals associated with either the Patriarca Family or the Winter Hill Gang; however, those two alleged associations-in-fact are not themselves alleged to be part of the Enterprise in this case. At trial, the government will have to prove, among other things, that the Enterprise has an ascertainable structure

---

[1] This numbering of issues is derived from the Defendants' Memorandum Regarding the Location of Arguments dated September 17, 1996.

separate and apart from the pattern of racketeering activity in which it engages. Chang, 80 F.3d at 1296. "The function of overseeing and coordinating the commission of several different offenses and other activities on an on-going basis is adequate to satisfy the separate existence requirement." Console, 13 F.3d at 651; see also Chang, 80 F.3d at 1299. The 4SI alleges such coordination. See ¶ 4. These allegations distinguish this case from United States v. Lacy, 87 F.3d 1324, 1996 WL 327095 (9th Cir. June 11, 1996). However, as set forth in ¶ 15 hereinbelow, the court is requiring the government to amplify in a bill of particulars the allegations in the 4SI Count 1, ¶ 4 concerning the structure of the alleged Enterprise.

2. Defendants' Motion to Dismiss Racketeering Acts 20 to 24 because they do not vertically relate to the alleged Enterprise (Issue I.h) is DENIED. With regard to Racketeering Acts 21 to 24, the murders of the Bennetts and Grasso, this issue should be rendered moot because as a remedy for grand jury abuse the court will be excluding the evidence of Hugh Shields on which these charges rely. With regard to Racketeering Act 20, the Fitzgerald bombing, the government will have to prove a vertical relationship to the Enterprise charged in the 4SI, rather than to the Patriarca Family alone. United States v. Indelicato, 865 F.2d 1370, 1385 (1st Cir. 1989). As defendants again acknowledged on January 9, 1996, criminal conduct may, however, be related to more than one RICO enterprise.

Even if the Winter Hill Gang did not exist as of 1968, the 4SI

2

alleges an Enterprise made up of individuals, not entities. See ¶ 1(k). That Enterprise could have predated the emergence of the Winter Hill Gang. Moreover, the 4SI alleges that the Winter Hall Gang was known by "various names," ¶ 1(b), and emerged from a Somerville gang headed by Buddy McClean and Howard Winter in the 1960's, ¶ 5. Thus, although not essential to proving the Enterprise in this case, the 4SI adequately alleges that the Winter Hill Gang existed in some form at the inception of the Enterprise.

3. Defendants Motion to Dismiss Racketeering Acts 1-7, 11, 12, 18-20, 22-27, 30, 36-38 because they do not vertically relate to the alleged Enterprise (Issue I.j) is DENIED, essentially for the reasons stated in ¶ 2 hereinabove. In addition, the fact that defendants Salemme, Martorano, and DeLuca had not been inducted as members of the Patriarca Family at the time of certain alleged Racketeering Acts is immaterial. The 4SI charges that they used their "membership in and association with the Patriarca Family ... to facilitate and carry out their unlawful activities" on behalf of the Enterprise alleged in this case. ¶ 1(k). The defendants could have been "associates" of the Patriarca Family before becoming "made members" and could have exploited that association to conduct the affairs of the Enterprise alleged in this case. These are questions of proof to be resolved at trial.

4. Defendants' Motion to Dismiss Racketeering Acts 19-21 and 25-27 because they do not vertically relate to the Enterprise (Issue I.k) is DENIED for the reasons stated in ¶¶ 2 and 3 hereinabove.

3

5. Defendants' Motion to Dismiss Count 1 because it pleads multiple RICO conspiracies (Issue I.n) is DENIED. Paragraph 2 alleges a single RICO conspiracy. The question of whether a single conspiracy existed is one of fact for the jury. United States v. Sepulveda, 15 F.3d 1161, 1190-91 (1st Cir. 1993). The government is not required to produce all of its evidence before trial, and there is no criminal counterpart of a civil motion for summary judgment. United States v. Nabors, 45 F.3d 238, 240-41 (8th Cir. 1995); United States v. Coia, 719 F.2d 1120, 1125 (11th Cir. 1983). Therefore, like the earlier issues, the question of whether the government is able to prove a single RICO conspiracy must be reserved for trial.

6. Defendants' Motion to Dismiss Counts 1 and 2 of the 4SI for failure to allege a distinct pattern of racketeering activity with regard to each defendant (Issue 1.b) is DENIED. An indictment should be read in a practical, rather than technical, manner. United States v. Daily, 921 F.2d 994, 1000 (10th Cir. 1991). Count 1, ¶ 62 and Count 2, ¶ 3 each describe the particular, distinct pattern of racketeering activity with which each defendant is charged. As the 4SI indicates, and as the government confirmed on January 9, 1997, there is a separate pattern alleged for each defendant. Count 1, ¶ 62 and Count 2, ¶ 3 indicate that the grand jury understood that it was required to find probable cause to believe that each defendant conducted the affairs of the Enterprise through his own pattern of racketeering activity, fairly inform each defendant of the pattern of racketeering activity with which

4

he is charged, and will permit the court to instruct the jury properly on this issue and to resolve any double jeopardy questions that may arise if a defendant is acquitted on Count 1 and/or 2. Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Penagaricano-Soler, 911 F.2d 833, 839 (1st Cir. 1990).

7. Defendant Salemme's Motion to Dismiss Counts 1 and 2 to the extent that they rely upon the alleged collection of an unlawful debt (Issues I. e, f, and g) is DENIED. Predicating RICO liability on the collection of a single unlawful debt is constitutional. United States v. Oreto, 37 F.3d 739, 750-51 (1st Cir. 1994); United States v. Weiner, 3 F.3d 17, 24 (1st Cir. 1993). As the 4SI indicates, and as the government confirmed on January 9, 1997, contrary to defendants' contention, only Salemme is charged with liability based on the alleged collection of an unlawful debt. See 4SI Count 1, ¶ 63 and Count 2, ¶ 4. Conducting the affairs of an enterprise through a pattern of racketeering activity and conducting them through the collection of an unlawful debt may constitute separate offenses. United States v. Pepe, 747 F.2d 632, 673 (11th Cir. 1984).[2] Both offenses may, however, be alleged in a single count. Id.

There is authority for the proposition that an attempt to

---

[2] A question of whether there were two separate offenses might be presented if the alleged collection of the unlawful debt was also alleged as a racketeering act forming part of the defendant's pattern of racketeering activity. In such circumstances, a totality of the circumstances test would have to be applied. See, e.g., United States v. Dean, 647 F.2d 779, 788 (8th Cir. 1981).

5

collect an unlawful debt is sufficient to establish a RICO offense. Id. at 674; United States v. Eufrasio, 935 F.2d 553, 576 (3rd Cir.), cert. denied, 502 U.S. 925 (1991); United States v. Vastola, 899 F.2d 211, 226 (3rd Cir.), vac'd on other grounds, 497 U.S. 1001 (1990). These decisions are not, however, rooted in the literal language of the statute. The court RESERVES its ruling on this issue until it can determine from the evidence presented at trial whether it is necessary to decide it. If the evidence, if believed, would show an actual collection, rather than an attempted collection, of an unlawful debt, this issue may be moot.

8. Defendants' motions to dismiss Racketeering Acts 20A, 21A, 22A, 23A, and 24A (Issue I.c) are DENIED. As described in ¶ 2 hereinabove, with regard to Racketeering Acts 21A, 22A, 23A and 24A concerning the alleged murders of the Bennetts and Grasso, this issue should, as a practical matter, be moot. With regard to Racketeering Act 20A, the alleged conspiracy to murder Fitzgerald, the defendants recognize that this charge is a common law offense in the Commonwealth of Massachusetts. See Memorandum of Law in Support of Defendants' Motion to Dismiss the Fourth Superseding Indictment, and for Severance at 25. Therefore, even though the 4SI does not expressly state that conspiracy to commit murder is a common law offense, it provides defendants and the court with the legally required notice. The fact that the 4SI does not expressly state that conspiracy to commit murder is a common law offense in Massachusetts does not suggest that the grand jury did not know that it was such an offense. Nor is an allegation concerning the

6

source of the prohibition otherwise required. United States v. Hutcheson, 312 U.S. 219, 229 (1941)("In order to determine whether an indictment charges an offense against the United States, designation by the pleader of the statute under which he purported to lay the charge is immaterial") (Frankfurter, J.); Williams v. United States, 168 U.S. 382, 389 (1887)(same) (Harlan, J.); Paz Morales v. United States, 278 F.2d 598, 599-600 (1st Cir. 1960)("[O]mission of the citation shall not be ground for dismissal of the indictment ... 'if the error or omission did not mislead the defendant to his prejudice.'")(quoting Fed. R. Crim. P. 7(c)(3)).

9. Defendants' Motions to Dismiss Racketeering Acts 3, 14, 20-28 because they are duplicitous (Issues 1.d and i) are DENIED. Racketeering Acts 14, 20-25, and 27-28 do each allege more than one offense. There is not a proper basis to infer, however, that the grand jurors did not understand that at least 12 of them had to find probable cause to include any alleged offense as a Racketeering Act and, therefore, a trial on all charges is appropriate. See, e.g., Costello v. United States, 350 U.S. 359, 362-63 (1956). The court will protect against the dangers presented by duplicity by utilizing a special verdict form with a distinct question for each alleged offense and instructing the jury that it must be unanimous to find any offense constituting a Racketeering Act to be proven. United States v. Pungitore, 910 F.2d 1084, 1136 (3d Cir. 1990). Even in the absence of the duplicitous charges, the court would be required to use a special verdict form because, if a defendant is convicted, the particular

pattern of racketeering activity proven will be relevant to sentencing under U.S.S.G. § 2E1.1(a)(2), which requires determination of the "underlying racketeering activity" in calculating the Guideline range. See United States v. Melvin, 27 F.3d 710, 716 (1st Cir. 1994).

10. Defendants' Motions to Dismiss Counts 1 and 2 because of a failure to allege adequately the essential jurisdictional element concerning interstate and foreign commerce (Issues I.1 and m) are DENIED. The 4SI does state that the alleged Enterprise was engaged in and had activities that affected interstate and foreign commerce. See Count 1, ¶ 2, and Count 2, ¶ 2. Thus, this case is distinguishable from United States v. Hooker, 841 F.2d 1225, 1231-32 (4th Cir. 1987), in which it was found that an essential element of a RICO offense had not been charged. Where, as here, the alleged Enterprise is an association-in-fact formed for illegal purposes, the interstate and foreign commerce element can be satisfied by proof of the activities of the Enterprise, which may also be alleged predicate acts. United States v. Bagnariol, 665 F.2d 877, 893 (9th Cir. 1981). The 4SI informs the defendants and the court that some of the alleged Racketeering Acts affected interstate commerce. See, e.g., Racketeering Acts 1, 25, 26, 27, and 29.

As the Patriarca Family and Winter Hill Gang are not alleged participants in the Enterprise, see 4SI Count 1, ¶ 1(k), their impact on interstate or foreign commerce is not relevant to proving that the Enterprise alleged here satisfied this essential element

8

of a RICO offense. To eliminate any possible confusion or unfairness, as set forth in ¶ 15 hereinbelow, the court is requiring the government to file a bill of particulars to identify and clarify the allegations in Counts 1 and 2 of the 4SI concerning the interstate or foreign commerce jurisdictional element.

The court RESERVES for trial the question whether the Supreme Court decision in United States v. Lopez, 115 S.Ct. 1624 (1995), alters prior rulings that only a minimal effect on interstate or foreign commerce must be proven to establish a RICO offense. See e.g., Doherty, 867 F.2d at 68.

11. DeLuca's Motion to Dismiss Counts 23 and 24 and Count 1, Racketeering Act 26 as time-barred because the original indictment was improperly sealed (Issue II) is DENIED. A magistrate judge may grant a government request to seal an indictment for any legitimate law enforcement purpose or where the public interest otherwise requires it. United States v. Richard, 943 F.2d 115, 118 (1st Cir. 1991). In this case, the government provided a detailed affidavit explaining its fear that if the indictment of DeLuca became known to his putative co-defendants, there was a substantial risk that they would flee before being charged. Preventing such flight by individuals other than the initial defendant is a legitimate prosecutorial objective. Id. The magistrate judge found that sealing was justified and this decision deserves deference from the district court where, as here, there was a reasonable basis for it. United States v. Sharpe, 995 F.2d 49, 52 (5th Cir. 1993); United States v. Ramey, 791 F.2d 317, 321 (4th Cir. 1986); United States

9

v. Southland, 760 F.2d 1366, 1379-80 (2d Cir. 1985). The reasonableness of the government's concern was confirmed when two of DeLuca's defendants, Salemme and Bulger, fled after the first of their co-defendants, Flemmi, was arrested. As DeLuca has not shown any actual prejudice from the sealing for about three months of the original indictment against him, he is not entitled to have those charges dismissed. Richard, 943 F.2d at 119 (six month sealing did not justify dismissal in the absence of substantial, irreparable, actual prejudice to the defendant).

12. Defendants' Motions to Dismiss various counts and/or racketeering acts as facially insufficient (Issue III) or for improperly charging a continuing offense (Issue VII) are DENIED.

In contrast to its predecessors, the 4SI specifically names in Count 3 the purported victims of the alleged conspiracy to extort bookmakers, and also names them in the corresponding alleged Racketeering Act 1 of Count 1, ¶ 4. The 4SI also states the names of the indicted coconspirators and the time frame of the alleged conspiracy. Id. These charges are, therefore, comparable to those deemed legally sufficient in United States v. Sedlak, 720 F.2d 715, 719 (1st Cir. 1983), cert. denied, 465 U.S. 1037 (1984). Primarily because the alleged victims are now named, this case is distinguishable from United States v. Tomasetta, 429 F.2d 978, 980 (1st Cir. 1970). Id.

A single scheme of Hobbs Act extortion, 18 U.S.C. § 1951, spanning multiple years may be considered a continuing offense for statute of limitations purposes, among others. United States v.

10

Bucci, 839 F.2d 825, 829-30 (1st Cir.), cert. denied, 488 U.S. 844 (1988); United States v. Forszt, 655 F.2d 101, 103-04 (7th Cir. 1981); United States v. Hedman, 630 F.2d 1184, 1199 (7th Cir. 1980), cert. denied, 450 U.S. 965 (1981); United States v. Aliperti, 867 F.Supp. 142, 147 (E.D.N.Y. 1994). In view of the nature of the crime of extortion, this conclusion is consistent with the Supreme Court's analysis in Toussie v. United States, 397 U.S. 112, 115 (1970). Aliperti, 867 F.Supp. at 147.

Counts 4, 5, 6, 7, 12, 13, 14 expressly allege such a continuing offense. See, e.g., Count 4 ("Continuously between January 1979 and June 1992 . . ."). Counts 8, 9, 10, 11, 15, 16, and 18 use different language. See, e.g., Count 8 ("From on or before 1989 through June 1992 . . ."). Although this language is consistent with an alleged single, continuing scheme of extortion resulting in multiple payments, the use of different language by the grand jury in different Counts creates an arguable ambiguity and a question whether the Counts not using the term "continuously" are duplicitous. On January 10, 1997 the government represented that Counts 4 through 18 each allege a single, continuing scheme to extort. The alternative forms of allegations in the 4SI are each consistent with this representation and the court is satisfied from the face of the 4SI that this is what the grand jury intended.

As set forth in ¶ 15 hereinbelow, however, the court is requiring the government to confirm and clarify in a bill of particulars that Counts 4 to 18 each allege a single, continuing scheme to extort and to provide more detail concerning those

11

alleged continuous schemes.

As Counts 4 to 18 of the 4SI each identify the alleged victim, this case is materially different than Tomasetta, 429 F.2d at 980, with regard to these Counts.

The use of extortionate means to collect extensions of credit, 18 U.S.C. § 894, also may constitute, and be alleged as, a continuing offense. See United States v. DiSalvo, 34 F.3d 1204, 1218 (3rd Cir. 1994) ("[F]or statute of limitations calculations, the prosecution had to show that the [§ 894] extortion continued after October 1986."); United States v. DeStefano, 429 F.2d 344, 345-47 (2d Cir. 1960)(repeated threats constitute one offense). Count 27, in pertinent part, uses the same language as Count 8 ("In or about and between approximately January 1990 and August 1991 . . ."), and therefore presents the same questions. Once again the government has represented that this Count alleges a single, continuing scheme and the language in the indictment is consistent with this. Once again, however, as set forth in paragraph 15 hereinbelow, the government is being required to confirm and clarify this in a bill of particulars.

13. Defendants' motion to dismiss the Hobbs Act charges as unconstitutional in view of United State v. Lopez, 115 S.Ct. 1624 (1995), (Issue VI) is DENIED. See United States v. Bolton, 68 F.3d 396, 399 (1995); United States v. Stillo, 57 F.3d 553, 558 n. 2 (7th Cir. 1995).

14. Defendants' motions to sever various defendants (Issue IV), to dismiss Counts 19-22 as a result of pre-indictment delay

(Issue V), and to strike surplusage (Issue VIII) are RESERVED for future consideration.

15. Defendants Motion for a Bill of Particulars (Docket No. 399) is ALLOWED in part and DENIED in part. More specifically, the 4SI satisfies constitutional requirements. See Russell v. United States, 369 U.S. 749, 765 (1962). However, in view of the complexity of some of the charges, the court has decided to exercise its discretion under Fed. R. Crim. P. 7(f) to order that the government provide a bill of particulars regarding certain issues. Accordingly, by January 31, 1997, the government shall file and serve a bill of particulars:

a) Amplifying the allegations in the 4SI, Count 1, ¶ 4 with regard to how the alleged Enterprise served a coordinating function in a manner which gave it a separate existence and structure beyond that inherent in the alleged acts of racketeering activity. See, e.g., Chang, 80 F.3d at 1296; Console, 13 F.3d at 651.

b) Identifying and amplifying the allegations in the 4SI, Counts 1 and 2 which provide the basis for proving that the alleged Enterprise, rather than the Patriarca Family or the Winter Hill Gang, was engaged in, or had activities that affected, interstate or foreign commerce. See Bagnariol, 665 F.2d at 893.

c) Confirming its understanding that the 4SI Counts 4 to 18 and 27 each allege a single, continuing scheme and amplifying the description of each such scheme.

d) With regard to 4SI Counts 4 to 18 and 27, if the

13

government intends to introduce evidence that a defendant committed the alleged offense by aiding and abetting anyone other than a co-defendant charged in that Count, the government shall identify the person that the defendant allegedly aided and abetted.[3]

Charles F. Wolf
UNITED STATES DISTRICT COURT

---

[3] If the bill of particulars names anyone other than an indicted co-defendant it shall be filed under seal.

14