UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 94-10287 |
| | ) | |
| FRANCIS P. SALEMME, et al. | ) | |
| | | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 97-10009 |
| | ) | |
| JOHN MARTORANO | ) | |

MEMORANDUM AND ORDER

WOLF, D.J.                                    November 5, 1997

I.   Summary

Defendants Robert DeLuca, Stephen Flemmi, and Francis Salemme
have each asked the court to appoint counsel for them pursuant to
the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A.  Thus, it is
necessary for the court to conduct an appropriate inquiry to
determine whether each defendant is financially unable to continue
to retain counsel privately and, therefore, is eligible for the
appointment of counsel at public expense.

As the government recognizes, in the circumstances of this
case, each defendant's request for the appointment of counsel
involves a conflict between his Fifth Amendment right not to say
anything which may tend to incriminate him that could be used
against him in a criminal prosecution and his Sixth Amendment right
to effective assistance of counsel.  The government recommends that
this conflict be resolved by requiring that the defendants
establish their financial eligibility for appointment of counsel in
an adversary hearing in which they would be provided use immunity

for their statements.   The defendants oppose this request and assert that the court should instead decide this matter based upon an _in_ _camera_ review of _ex_ _parte_ submissions by them and by the government.   The court has the discretion to adopt either of these approaches.   See _United_ _States_ _v._ _Gravatt_, 868 F.2d 585, 590-91 (3rd Cir. 1989).

Upon consideration of the submissions of the parties and the arguments presented at the October 31, 1997 hearing, the court has decided that in the first instance it will receive _ex_ _parte_ submissions from the defendants and the government.   If possible and appropriate, the court will decide whether to appoint counsel based on those submissions.   If those submissions indicate that an adversary hearing is necessary or appropriate, the court will then provide the defendants use immunity for their statements, order the exchange of the parties' submissions, and conduct that hearing.

II.   Factual Background

DeLuca was initially indicted on October 25, 1994.   That indictment was sealed until January 10, 1995, when the First Superceding Indictment was returned, charging DeLuca, Salemme, Flemmi, and several other defendants with constituting and conducting a RICO enterprise and committing many other crimes.   The government has obtained additional, superceding indictments.   The most recent is the Fourth Superceding Indictment, which was returned on July 2, 1996.   Among other things, the Fourth Superceding Indictment, like its predecessors, seeks the forfeiture of the defendants' assets to the extent that those assets

constitute, or were derived from, the proceeds of the racketeering activity of the alleged RICO enterprise.

Since January 1995, DeLuca has retained as counsel Anthony Cardinale, Esq. After determining that there was not for pretrial purposes an impermissible potential conflict of interest, and obtaining a waiver of any such claim by each of the defendants, the court permitted Mr. Cardinale to serve also as retained counsel for Salemme with the understanding that DeLuca and Salemme would be required to have separate representation at trial.  John Mitchell, Esq. was subsequently retained by Salemme to serve as Mr. Cardinale's co-counsel for the purpose of litigating certain pretrial motions.

Flemmi initially retained Richard Egbert, Esq. to represent him in this case.   After the government filed a motion to disqualify Mr. Egbert because of an alleged conflict of interest, in August 1995 Flemmi retained Kenneth Fishman, Esq. to succeed Mr. Egbert as his counsel.  On March 11, 1997, Flemmi was indicted in another case in this District, United States v. Flemmi, et al., Cr. No. 97-10060-REK, alleging money laundering.   That case was assigned to Judge Robert Keeton.   Judge Keeton granted the government's motion to restrain until trial assets held in the name of Flemmi's son but alleged to belong to Flemmi and to be forfeitable in the money laundering case.   That restraining order remains in effect.

The pretrial litigation of this case has been intense and prolonged.  Many motions to dismiss and suppress have been heard

3

and decided.  In the spring of 1997, the defendants persuaded the court to compel the government to disclose that Flemmi and Bulger, among others, had long been informants for the Federal Bureau of Investigation, who may have been authorized to commit some of the acts charged as crimes in this case.  This disclosure has generated discovery disputes that the court has been addressing since June 1997. When discovery is complete, lengthy evidentiary hearings will be needed to resolve defendants' motions to suppress electronic surveillance and to dismiss.  The parties estimate that the trial of this case may take up to a year if the case is not dismissed or otherwise resolved.

III. <u>Analysis</u>

The CJA provides that a defendant charged with committing a federal felony is entitled to the appointment of counsel at public expense if he "is financially unable to obtain counsel." 18 U.S.C. § 3006A(b).  The court must make an "appropriate inquiry" to determine if an individual is eligible for appointed counsel.  <u>Id.</u>

The defendant bears the burden of proving that he is financially unable to obtain counsel. <u>United States v. Harris</u>, 707 F.2d 653, 660 (2d Cir.), <u>cert. denied</u>, 464 U.S. 997 (1983).  As part of this burden, he "has the responsibility of providing the court with sufficient and accurate information upon which the court can make an eligibility determination." 7 Administrative Office of the United States Courts, <u>Guide to Judiciary Policies and Procedures</u>, Appointment of Counsel in Criminal Cases § 2.03(C)

4

(1993).  "The prosecution and other interested entities may present to the court information concerning the person's eligibility, but the judicial inquiry into financial eligibility shall not be utilized as a forum to discover whether the person has assets subject to forfeiture, or the ability to pay a fine . . . or other purposes not related to the appointment of counsel."  Id.

"Any doubts as to the person's eligibility should be resolved in his favor; erroneous determinations of eligibility may be corrected at a later time."  Id. at § 2.04.  More specifically, at sentencing, the court can utilize the information in the Presentence Report, among other things, to determine whether to order the defendant to pay some or all of the costs of his representation.  Id.; United States v. Martin-Trigona, 684 F.2d 485, 492 n.9 (7th Cir. 1982)(stating that, "[i]f the court appoints counsel for [the defendant] and he later liquidates his assets and becomes financially able to retain counsel, the court may then require him to reimburse the Criminal Justice Fund.").

"A person is 'financially unable to obtain counsel' within the meaning of subsection (b) of the CJA if his net financial resources and income are insufficient to enable him to obtain qualified counsel.  In determining whether such insufficiency exists, consideration should be given to (a) the cost of providing the person and his dependents with the necessities of life, and (b) the costs of defendant's bail bond if financial conditions are imposed, or the amount of the case deposit defendant is required to make to secure his release on bond."  7 Guide to Judiciary Policies and

Procedures, supra, § 2.04.

In determining whether a defendant is financially unable to retain counsel, the court may consider whether he has income or assets available to him from other sources, including his spouse. See United States v. Barcelon, 833 F.2d 894, 897 n.5 (10th Cir. 1987); United States v. Martinez-Torres, 556 F. Supp. 1275, 1279 (S.D.N.Y. 1983). However, "[t]he initial determination of eligibility should be made without regard to the financial ability of the person's family unless his family indicates willingness and financial ability to retain counsel promptly. At or following the appointment of counsel, the judicial officer may inquire into the financial situation of the person's spouse . . . and if such spouse . . . indicates [her] willingness to pay all or part of the costs of counsel, the judicial officer may direct deposit or reimbursement." 7 Guide to Judiciary Policy and Procedure, supra, § 2.06 (emphasis added).

Typically, the CJA 23 form of financial affidavit, attached hereto as Exhibit A, is used to determine whether a defendant is eligible for the appointment of counsel. See Gravatt, 868 F.2d at 589. However, "CJA Form 23 is not a required statutory form. It is an administrative tool used to assist the court in appointing counsel." United States v. Moore, 671 F.2d 139, 141 (5th Cir. 1982). See also United States v. Ellsworth, 547 F.2d 1096, 1097 (9th Cir. 1976), cert. denied, 431 U.S. 931 (1977). Similarly, while the CJA Plan for the District of Massachusetts requires that a defendant seeking appointment of counsel submit a "financial

6

affidavit," it does not require submission of the CJA 23.   United
States District Court for the District of Massachusetts Plan for
Implementing the Criminal Justice Act of 1964, as Amended 18 U.S.C.
§ 3006A, § V.C. (1993) ("D. Mass. CJA Plan").

In certain cases it may be inappropriate to require the
defendant to submit a CJA 23 and/or to disclose it to the
government.  See Gravatt, 868 F.2d at 589; Moore, 671 F.2d at 140-
41; United States v. Anderson, 567 F.2d 839, 840-41 (8th Cir.
1977).  More specifically:

> [W]hen . . . a defendant asserts a colorable claim that
> disclosure to the government of a completed CJA 23 would
> be self-incriminating, the court may not adopt an
> unconditional requirement that the defendant complete the
> CJA 23 before his application for appointment of counsel
> will be considered. To do so may place the defendant in
> the constitutionally untenable position of having to
> choose between his Sixth Amendment right to counsel and
> his Fifth Amendment privilege against self-incrimination.

Gravatt, 868 F.2d at 589.  See also Moore, 671 F.2d at 140,
Anderson, 567 F.2d at 840-41.

DeLuca, Salemme, and Flemmi argue that in view of the charges
against them and the related forfeiture allegations, it would be
improper to require them to submit a CJA 23 and serve it on the
government.  The government agrees that each of the defendants has
a colorable Fifth Amendment claim that would make it impermissible
for the court to order him to do so.   See October 31, 1997
Transcript at 38. The parties disagree, however, about how the
tension between defendants' Fifth and Sixth Amendment rights should
be resolved.

The courts which have been required to decide this issue have

7

recognized that there are alternative means of addressing this issue. As the Court of Appeals for the Third Circuit wrote in Gravatt:

> [T]he district court may properly reconcile these competing concerns in either of two ways. First, following the approach prescribed in Anderson, [567 F.2d at 840,] the court may afford the defendant the "opportunity to disclose the required financial information to the trial court for it to review in camera, . . . [following which] the financial data should be sealed and not made available for the purpose of tax prosecution." . . . Second, if the trial court deems an adversary hearing on defendant's request for appointment of counsel to be appropriate, the court may grant use immunity to the defendant's testimony at that hearing. See [United States v. Branker 418 F.2d 378, 380 (2d Cir. 1969)]; Simmons v. United States, 390 U.S. 377, 389-94 (1968)(Defendant's testimony at a pretrial suppression hearing may be excluded at trial).

868 F.2d at 590. See also United States v. Davis, 958 F.2d 47, 49 n.4 (4th Cir. 1992)(district court avoided Fifth Amendment challenge by examining defendant ex parte and sealing answers); Anderson, 567 F.2d at 840 (finding that district court should have received financial information in camera); Ellsworth, 547 F.2d at 1097-98 (affirming where district court assured that financial information could not be used for further prosecution); United States v. Sarsoun, 834 F.2d 1358, 1362-63 (7th Cir. 1987)(upholding denial of appointment of counsel where defendant failed to respond to questions regarding income despite assurances that information would not be used against him, unless he committed perjury).[1] The

---

[1]The Court of Appeals for the First Circuit has not decided the issue of what a district court must do when, as here, a defendant seeking appointment of counsel has a legitimate Fifth Amendment concern about disclosing his income and assets to the government. See United States v. Beverly, 993 F.2d 1531, 1993 WL 165348, **2 (1st Cir. 1993)(unpublished disposition) (finding

selection of the most appropriate method of resolving the tension between the Fifth and Sixth Amendment rights of a defendant seeking the appointment of counsel is committed to the district court's sound discretion. Gravatt, 868 F.2d at 591.

In this case, DeLuca and Salemme each represent that their respective spouses are not seeking support from them while they are detained and are unwilling to contribute any assets or income they may have to pay defendants' retained counsel.   Flemmi is not married.   All three defendants propose that they be permitted to file ex parte a CJA 23 affidavit, without responding to the questions concerning their spouses.   They recognize that if this approach is adopted the government will also be permitted to make an ex parte submission challenging their claims of indigency.

The government asserts that the court should require that each defendant fully complete a CJA 23; that they receive use immunity for their statements to the extent that such immunity is provided to a defendant who testifies at a suppression hearing by Simmons v. United States, 390 U.S. 377, 394 (1968); that their affidavits be disclosed to the government; and that adversary evidentiary hearings be conducted to determine whether each defendant is eligible for appointment of counsel.

The court concludes that it is most fair and efficient that in the first instance it receive ex parte both defendants' CJA 23 affidavits and the government's submission.   If DeLuca and

---

that defendant did not even make a colorable claim that public disclosure of his financial information would violate his Fifth Amendment rights).

Salemme's wives submit affidavits stating that they do not seek support from their husbands while they are detained and are unwilling to contribute to the cost of their counsel, the questions on the CJA 23 concerning their income and assets need not be answered. See 7 Guide to Judiciary Policy and Procedure, supra, § 2.06.[2]  In completing their affidavits, each defendant must disclose all assets in which he has a beneficial interest, whether held in his name or the name of another person or entity, and state whether he has funds available for his defense from other sources such as family, friends, trusts, or estates. See Barcelon, 833 F.2d at 897 n.5; Martinez-Torres, 556 F. Supp. at 1279.

Flemmi's affidavit need not address the assets restrained by Judge Keeton in the money laundering case because they are not now available to fund his defense. Salemme's affidavit shall address whether he has received, or expects to receive, any or all of the $60,000 discussed by Jack Salemme and Frederick Simone in their correspondence and telephone conversations during the summer of 1997. See In re Cardinale, Cr. No. 97-10267, Ex. 4. DeLuca's affidavit shall address the availability of the residence in Lincoln, Rhode Island which is subject to a motion to forfeit in his earlier case there. Defendants should recognize that they will be subject to prosecution for any false statements they may make in their affidavits. United States v. Kahan, 415 U.S. 239, 243 (1974).

---

[2]This is the approach that was adopted in determining whether to appoint counsel for codefendant James Martorano. See September 9, 1996 Order.

If the parties' ex parte submissions indicate that it is necessary or appropriate, the court will order that those submissions be exchanged, that adversary hearings focused on any material fact(s) in dispute be conducted, and that the defendants receive use immunity, coextensive with that provided by Simmons, for their statements. At this point, this court understands that such immunity would prohibit both the direct use of each defendant's statements against him and also the use of any evidence derived from those statements. See United States v. Boruff, 870 F.2d 316, 319 (5th Cir.), cert. denied, 493 U.S. 855 (1989). It appears, however, that the government would be permitted to use a defendant's statements for impeachment purposes if he testifies at trial. See United States v. Smith, 940 F.2d 710, 713 (1st Cir. 1991); United States v. Beltran-Gutierrez, 19 F.3d 1287, 1290 (9th Cir. 1994); United States v. Quesada-Rosadal, 685 F.2d 1281, 1283 (11th Cir. 1982). It also appears that such statements would be admissible at sentencing to determine the propriety of forfeiture, among other things. See United States v. Camacho, 779 F.2d 227, 231 (5th Cir. 1985), cert. denied, 476 U.S. 1119 (1986) (holding that statements made at a suppression hearing are, under Simmons, admissible at sentencing); Libretti v. United States, 116 S.Ct. 356, 363 (1995) (stating that, "criminal forfeiture is part of the sentence, not part of the substantive offense.").

However, it would be neither fair nor efficient to employ an adversary hearing involving Simmons immunity in the first instance. This case is three years old. The defendants are detained.

Lengthy, additional pretrial hearings to resolve serious questions
of possible government misconduct are necessary.  If the government
prevails in those hearings, a prolonged trial will evidently be
required.   In the circumstances, adversary hearings concerning
defendants' eligibility for appointment of counsel should not be
allowed to consume precious time unless they are important to
resolving some material issue that is in genuine dispute.  This is
especially true because it is foreseeable that if defendants are
provided use immunity for their statements, additional hearings may
be required in the future to determine whether the government can
prove that its evidence is untainted.  See Boruff, 870 F.2d at 319
(holding that under Simmons, "the government 'has an affirmative
duty to prove that the evidence it proposes to use is derived from
a legitimate source wholly independent of the compelled
testimony,'" quoting Kastigar v. United States, 406 U.S. 441, 460
(1972)). In addition, adverting unnecessary adversary hearings will
minimize the risk that the judicial inquiry into financial
eligibility for the appointment of counsel will be impermissibly
utilized by the government to discover if a defendant has assets
subject to forfeiture or the capacity to pay a fine if convicted.
See 7 Guide to Judiciary Policy and Procedures, supra, § 2.03(C).

     If the court decides that DeLuca, Flemmi, and/or Salemme are
now eligible for the appointment of counsel, it will also decide
the additional issues addressed at the October 31, 1997 hearing.
These issues include: whether defendants' retained counsel should
now be appointed as CJA counsel; if so, whether their appointments

should be retroactive to particular, earlier dates; whether randomly selected or recommended CJA counsel shall be appointed for DeLuca if he is financially unable to retain counsel[3]; and whether Mr. Cardinale and Mr. Mitchell shall, for pretrial purposes, be appointed as co-counsel for Salemme.[4]

IV.    ORDER

In view of the foregoing, it is hereby ORDERED that:

1.    DeLuca, Flemmi, Salemme, Mrs. DeLuca, and Mrs. Salemme shall each, by November 7, 1997 at 3:00 p.m., submit, under oath, the affidavits described earlier in this Memorandum. Their affidavits shall be submitted ex parte and filed under seal.

2.    The government shall, by November 7, 1997 at 3:00 p.m., file ex parte and under seal any affidavit(s) it wishes the court to consider in determining whether DeLuca,

---

[3]DeLuca agrees that it would be appropriate that he now have separate counsel if Mr. Cardinale continues to represent Salemme. The CJA Plan for the District of Massachusetts provides for the appointment of randomly selected private counsel from the CJA Panel. See D. Mass. CJA Plan, supra, § V.A. However, "in exceptional circumstances, a judicial officer [has] the discretion to appoint an attorney not on the CJA Panel, or a CJA Panel member whose name was not generated by the computerized process, in order to serve the interests of justice, judicial economy, or continuity of representation, or if there is some other compelling circumstance warranting his or her appointment." Id. If DeLuca seeks to have a particular attorney appointed to represent him, he shall address this issue in his submission.

[4]Under the CJA, the court may appoint co-counsel for a defendant "[i]n an extremely difficult case where the court finds it in the interest of justice" to do so. 7 Guide to Judicial Policies and Procedures, supra, § 2.11(B).

Flemmi and/or Salemme are eligible for the appointment of CJA counsel.

3.  Hearings will resume on November 12, 1997, at 9:00 a.m., and continue if necessary on November 13 and 14, 1997. The hearings will address issues concerning the appointment of counsel, modification of the June 26, 1997 Protective Order, discovery, and a schedule for evidentiary hearings regarding defendants' motions to suppress and dismiss.


UNITED STATES DISTRICT COURT

14

# FINANCIAL AFFIDAVIT

CJA 23

IN SUPPORT OF REQUEST FOR ATTORNEY, EXPERT OR OTHER COURT SERVICES WITHOUT PAYMENT OF FEE   REV. 1/90

IN UNITED STATES □ MAGISTRATE □ DISTRICT □ APPEALS COURT or □ OTHER PANEL (Specify below)
IN THE CASE OF

FOR _____

_____ VS. _____

AT _____

LOCATION NUMBER

PERSON REPRESENTED (Show your full name)

1 □ Defendant—Adult
2 □ Defendant—Juvenile
3 □ Appellant
4 □ Probation Violator
5 □ Parole Violator
6 □ Habeas Petitioner
7 □ 2255 Petitioner
8 □ Material Witness
9 □ Other (Specify)

CHARGE/OFFENSE (describe if applicable & check box ➔)   □ Felony   □ Misdemeanor

DOCKET NUMBERS
Magistrate
District Court
Court of Appeals

## ANSWERS TO QUESTIONS REGARDING ABILITY TO PAY

**ASSETS**

**EMPLOY-MENT**
Are you now employed? □ Yes □ No □ Am Self Employed
Name and address of employer:
IF YES, how much do you earn per month? $_____
IF NO, give month and year of last employment
How much did you earn per month $_____
If married is your Spouse employed? □ Yes □ No
IF YES, how much does your Spouse earn per month $_____
If a minor under age 21, what is your Parents or Guardian's approximate monthly income $_____

**OTHER INCOME**
Have you received within the past 12 months any income from a business, profession or other form of self-employment, or in the form of rent payments, interest, dividends, retirement or annuity payments, or other sources? □ Yes □ No
IF YES, GIVE THE AMOUNT RECEIVED & IDENTIFY THE SOURCES
RECEIVED _____ SOURCES _____

**CASH**
Have you any cash on hand or money in savings or checking account □ Yes □ No  IF YES, state total amount $_____

**PROP-ERTY**
Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)? □ Yes □ No
IF YES, GIVE VALUE AND DESCRIBE IT
VALUE _____ DESCRIPTION _____

**OBLIGATIONS & DEBTS**

**DEPENDENTS**
MARITAL STATUS  □ SINGLE □ MARRIED □ WIDOWED □ SEPARATED OR DIVORCED
Total No. of Dependents ____
List persons you actually support and your relationship to them

**DEBTS & MONTHLY BILLS**
(LIST ALL CREDITORS, INCLUDING BANKS, LOAN COMPANIES, CHARGE ACCOUNTS, ETC.)
APARTMENT OR HOME:
Creditors _____ Total Debt $____ Monthly Payt. $____

SIGNATURE OF DEFENDANT (OR PERSON REPRESENTED)
I certify the above to be correct.

**WARNING:** A FALSE OR DISHONEST ANSWER TO A QUESTION IN THIS AFFIDAVIT MAY BE PUNISHABLE BY FINE OR IMPRISONMENT, OR BOTH.